UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Crim. No. 22-186 (07) (SRN)

---

UNITED STATES OF AMERICA,

      Plaintiff,

v.

                                        **DEFENDANT'S POSITION WITH**
                                        **RESPECT TO SENTENCING FACTORS**

LISA MARIE MUSOLF,

      Defendant.

---

## INTRODUCTION

On December 12, 2022, Lisa Musolf pleaded guilty to Count I of the Indictment – conspiracy to distribute a mixture and substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) and 846. The PSR concludes that with a total offense level 24 (which considers a 4-level reduction as a minimal participant and a 3-level reduction for acceptance of responsibility), and a criminal history category of IV, Ms. Musolf's advisory guideline range is 77 to 96 months. (PSR ¶¶ 24, 109). The PSR found Ms. Musolf's criminal history category to be IV rather than III, leading to a higher range than the parties anticipated. (PSR ¶ 111).

Ms. Musolf is seeking a downward departure under USSG 4A1.3(b). We believe a departure is warranted because an additional criminal history point is unrelated to her involvement in past drug offenses, overstating the likelihood she will commit future crimes. If this court grants the motion, Ms. Musolf's advisory range would be that contemplated in the plea agreement – 63 to 78 months. From there, we are seeking a variance to a prison sentence between 24 and 30 months. Ms. Musolf is 60 years old, with a difficult history and strong family

support.  Her role was to provide a one-time transport to secure drugs, and thus minimally involved in this wide-ranging conspiracy.  She is not too far removed from a state prison sentence, where she successfully completed treatment.  She is employed and has been sober over a year.  She is voluntarily engaged in therapy, which is working to help her heal from her traumatic history of sexual abuse and the death of her son.  She is in a better place now than she has been for many years.  Neither public safety, the need for deterrence, just punishment nor her present emotional health or substance abuse needs warrant a lengthy prison sentence (if even a prison sentence at all).

## ARGUMENT

## I.   Criminal History Overrepresentation

Under USSG § 4A1.3(b)(1) a downward departure may be warranted "[i]f reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes…"  In this case, four of Ms. Musolf's seven criminal history points are derived from two drug possession convictions – both from 2017.  Two points derive from her committing the instant offense while she was on probation for one of those offenses.  Ms. Musolf received an additional seventh point, pushing her into criminal history category IV, for a misdemeanor theft conviction in 2017.  Given that her prior drug convictions involved small amounts, occurred relatively close in time, and the misdemeanor theft conviction is unrelated to her drug offenses, her determined criminal history category likely overstates her likelihood to commit future crimes. *See United States v. Hart*, 417 F.3d 838, 839 (8th Cir. 2005) (departure under § 4A1.3(b) appropriate to reduce criminal category from IV to III).  We respectfully ask this court to make this finding and depart to a criminal history category III.

II.     **The Federal Sentencing Standard**

This Court has discretion and the responsibility "to impose a sentence sufficient, but not greater than necessary, to comply with the basic aims of sentencing." *Rita v. United States*, 127 S. Ct. 2456, 2463 (2007).  We are confident this court is aware of these basic aims, which includes consideration of the nature and circumstances of the offense and the history and characteristics of the defendant.  *See* 18 U.S.C. § 3553(a)(1).  This is consistent with the basic notion that the sentencing judge is "to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and punishment to ensue." *Koon v. United States*, 518 U.S. 81, 113 (1996).  *See also Unites States v. Ruvalcava-Perez,* 561 F.3d 883, 886 (8th Cir. 2009) ("In sentencing a defendant, the district court should first determine the appropriate Guidelines range, then evaluate whether a traditional departure is warranted, and finally decide whether or not to impose a guideline sentence after considering all the § 3553 sentencing factors.").

III.    **18 U.S.C. § 3553 Factors**

A.     **The Nature and Circumstances of the Offense and Ms. Musolf's History and Characteristics Support a Sentence Below the Applicable Advisory Guideline Range**

**The Offense**

Ms. Musolf, heavily addicted to methamphetamine, agreed to allow one of her friends to use her car to travel to Kansas City, Missouri to pick up methamphetamine.  He offered her $500 and a small amount of meth in exchange for her car and her company.  When her co-defendant made this offer, her addict brain thought, "wow, I hit the jackpot!"  (PSR ¶ 43).  Unbeknownst to her, her friend was doing the bidding of another, well-connected member of the conspiracy, and law enforcement was watching their moves to Kansas City.  On January 23, 2022, agents confronted them when they stopped in a rest area just north of the Iowa border.  Law

enforcement found eight kilograms of methamphetamine in a duffle bag within her car. She was arrested on an outstanding probation violation warrant. While in custody a couple days later, she agreed to speak to one of the officers and confessed to her conduct. On February 2, 2022, she executed her stayed state prison sentence and was taken to MCF-Shakopee. She was released from prison on September 26, 2022. She appeared in federal court where she was released on state and federal supervision to her mother's house in Waltham, Minnesota. She has remained in compliance with all her release conditions since her release. She was discharged from her state sentence on January 22, 2023.

**The Offender**

Lisa Musolf is 60 years old. She currently lives with her 82-year-old mother in the house in which she grew up in Waltham, Minnesota. She is the mother of four children, three of which are living. Her son Drew committed suicide in 2014 in the home he shared with his mother. She and her brother found him in the locked garage. His death greatly affected Ms. Musolf. It still does but through recent therapy she is learning to cope. She partly blames herself for her son's death because earlier that day they had argued, she chastised him and told him to leave the house. She is so sorry that her last words to him were in anger. His death sent her on a downward spiral of guilt and grief. For years, she masked her grief with alcohol and drug use.

She has fond memories of her father and mother growing up in Waltham. She was very close to her father. He was a kind man, a hard worker, and made sure her and her brothers had what they needed. He suffered a stroke and died in 2010. She misses him dearly. Ms. Musolf cannot say the same for one of her older brothers. In high school, he began to drink heavily, and would often come home drunk and belligerent, causing a lot of stress and anxiety in the home. He hit her on more than one occasion, and she recalls her parents having to call the police to come take him to jail or Detox. Even more devasting, was the long-time sexual abuse she

suffered at the hands of an uncle, who touched and fondled and raped her for years away from the eyes of other family members, beginning when she was just 10 years old. Through her current therapy, she is just coming to grips with how that abuse affected her life.

Ms. Musolf joined the Army right out of high school. It was yet another unpleasant experience for her. After boot camps in Fort Jackson, South Carolina, and Fort Benjamin in Indiana, she was stationed in Wursberg, Germany. She recalls her brief time in Germany as a very lonely time. She was homesick and spent many nights drinking. She'd wake up hungover, barely able to get through the next day's activities. During one particularly binge filled evening, three of her fellow servicemen sexually assaulted her in her barracks. One of her female colleagues witnessed, and reported the assault, but Ms. Musolf's superior officers seemed to blame her, and she was told that if she wanted to leave the army, she should just "stay drunk." The army provided her with twenty-four-hour escorts, which she found intrusive, and within two weeks she was out of the army, and back in Waltham.

She then got married. The first of two when she was twenty-one. The marriage produced her first two children, Drew and Paul. Her husband cheated on her frequently and they divorced in 1987, after six years. Her second marriage to Brian Musolf was far more tumultuous. They had two children, Mariah and Clarissa. She and Brian would drink together and fought terribly. He was physically abusive, breaking her nose on one occasion and leaving her with permanent scars to her face from other assaults. Several times either she or her children would call the police, resulting in criminal charges against her husband, only to lead to dismissal of charges when she would lie or refuse to cooperate with local prosecutors after he promised to change. He never did. In 2009, Brian died of a massive heart attack in the living room of the family home. Ms. Musolf and one her daughters were present when it happened. She tried to revive him using CPR but she could not and she was left to witness his pain, physical anguish and

5

struggle to breath.  His death, and the way he died, left yet another long-lasting and traumatic impression on Ms. Musolf.

As for her substance abuse history, Ms. Musolf recalls having her first taste of alcohol when she was 10 years old.  She acknowledges a serious problem with alcohol her entire life. She describes herself as a functioning alcoholic, regularly employed helping to support her family but binge drinking on her days off.  She reports that she was a "bad drunk", and "scrappy", and she knows she was to blame for some of the arguments she had with her second husband.  She was arrested for her first DUI when she was twenty-nine, and received three more after, the last twelve years ago at age forty-eight.  Even these bad experiences, however, did not stop her from drinking, fueled in part by unresolved grief issues and a newfound addiction to methamphetamine.

Her penchant for serious drug use started relatively late in life.  In her mid-thirties she started to experiment with cocaine on the weekends.  A few years later, she was introduced to methamphetamine.  She used meth sporadically until she soon became addicted, progressing to using every day.  Methamphetamine would become "a daily hunt."  It led to two separate convictions for possessory drug offenses, the first at the ripe age of fifty-three, and the second less than a year later when she was fifty-four.

Her life is good currently, maybe better than it's ever been.  Ms. Musolf hasn't had a drink in over fourteen months.  She participated in and completed a chemical health treatment program while in prison.  After her release, she secured a chemical health evaluation which recommended continued abstinence, which she's been able to do.  She has not used methamphetamine since her arrest in January 2022.  Despite a diagnosis of PTSD, she is feeling better than she has in many years.  She is clearheaded.  She is trying to eat healthy.  She is enjoying life with her children and her ten grandchildren.  She loves her family very much, and

6

they love (and need) her.[1]   She is trying to be the mother and grandmother she wished she could've throughout their lives.   In the past few months, she returned to her job as a laborer at McNeilus Steele in Dodge Center, working 40 hours a week.   She visits with a therapist every two weeks at the VA in Rochester to address her mental health and chemical health issues. Being able to talk to someone about her past sexual trauma, the death of her son, her addiction, even her fear of the unknown which comes with this criminal prosecution, has been big help to her.   She'd be grateful to be able to continue with her therapist.   She also meets with a psychiatrist periodically for medication management.   She knows that with love and support of her family, her commitment to live a meaningful and sober life, her remorse, her cooperation, and acceptance of responsibility, she possesses the characteristics supportive of a downward variance from the advisory guideline range.

### B.   The Need to Impose a Sentence That Reflects the Seriousness of the Offense, Promotes Respect for Law, Provides Just Punishment, Adequate Deterrence, and Public Safety Can be Accomplished with a Below Guideline Sentence

The Sentencing Commission "fills an important institutional role: It has the capacity courts lack to base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise." *United States v. Ferguson*, No. CR 17-204 (JRT/BRT), 2018 WL 3682509, at *2 (D. Minn. Aug. 2, 2018) (citing *Kimbrough v. United States*, 552 U.S. 85, 108-09 (2007)) (internal quotations omitted). Usually, the Guidelines recommended by the Commission, in the ordinary case, "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Id.*  However, the Sentencing Commission "departed from the empirical approach when setting the Guidelines range for drug offenses," and the Guidelines for methamphetamine offenses specifically "are not based on empirical data and

---

[1]  We are submitting letters from her mother, and her two daughters.

national experience, thus do not exemplify the Commission's exercise of its characteristic institutional role." *Id.* at *2-3. The Guidelines for these offenses result in sentences "much more severe than the average sentences previously meted out to drug trafficking offenders." *Id.* at *3 (citing *United States v. Ibarra-Sandoval*, 265 F. Supp. 3d 1249, 1253 (D.N.M. 2017)). As such, a sentence below the advisory guidelines range in a methamphetamine case can (and frequently does) sufficiently reflect the seriousness of the offense conduct, promote respect for law, provide just punishment and adequate deterrence, and simultaneously protect the public.

Indeed, it is always difficult to measure the degree to which an individual needs to be removed from society to satisfy the goals of public safety, rehabilitation, deterrence and just punishment. To be sure, someone who preys on others, who inflicts pain and suffering, is a threat and a menace to society. Incarceration for people like this serves to protect public safety. Ms. Musolf is not that person. This offense did not involve violence, nor is she a violent person. She is not someone society needs to be afraid of or to be protected against. She understands what she did was wrong. She is very sorry for her conduct, and she has expressed her sorrow and poor judgment to the people she hurt. She agreed to allow her friend to use her car because he offered her money she did not have and methamphetamine she desperately thought she needed. She understands now how stupid that was.

And what of deterrence? While locking someone up for an extended period certainly has a specific deterrent effect for the individual who committed the crime, the vast body of research demonstrates the length of a sentence has little deterrent effect with the general population. On the real-world question of whether increases in penalties significantly reduce the incidence of

serious crimes, "the consensus conclusion of governmental advisory bodies in many countries is maybe, a little, at most, but probably not."[2]

Because there is no consistent and plausible evidence that harsher sentences deter crimes, deterrence as a policy goal in this case shouldn't be overemphasized.  Incapacitating Ms. Musolf will prevent her from committing further crimes while she is in custody, but an advisory guideline prison sentence is not necessary to deter her from future criminal behavior.  Indeed, one could safely say, on the effectiveness of *specific* deterrence, these past fourteen months have had a significant deterrent effect.  The aim of deterrence as it relates (unsatisfactorily) to the general population and (satisfactorily) to Ms. Musolf has been achieved.  With a commitment to sobriety and to her family, she does not need a guideline sentence to protect the public or to deter her from future bad behavior or as just punishment for her crime.  Moreover, Ms. Musolf is sixty years old, an age well beyond that typically associated with recidivism.[3]  If she stays true to her commitments, she does not pose a future threat to herself or public safety.  If she stays true, a sentence not to exceed 30 months is more than adequate to achieve the sentencing goals set forth in § 3553(a)(2).

### C.     The Need to Avoid Unwarranted Sentence Disparities Between Ms. Musolf and Her Co-Defendants

"Although § 3553(a) does not require district courts to consider sentencing disparity among co-defendants, it also does not prohibit them from doing so."  *United States v. Parker*, 462 F.3d 273, 277 (3d Cir. 2006).     The advisory guidelines here – five to seven years – for someone who played a minimal role in the offense, is far more than necessary to achieve the

---

[2] Michael Tonry, *Sentencing Guidelines* 137 (Norval Morris, ed., 1996).
[3] "Recidivism rates decline relatively consistently as age increases," from 35.5% under age 21, to 9.5% over age 50. USSC, *Measuring Recidivism* (2004), http.//www.ussc.gov/publicat/Recidivism_General.pdf.

goals of sentencing.   We simply ask this Court to use its considered judgment to fashion a sentence consistent with Ms. Musolf's criminal history and conduct vis-à-vis the other defendants in this case to fashion a sentence that is just and fair for her.

## CONCLUSION

We respectfully request this Court to grant a downward departure, and a variance from the advisory range to impose a sentence between 24 and 30 months.[4] *This sentence is sufficient, but not greater than necessary*, to comply with the sentencing aims of § 3553(a), which consider the nature of the offense and Ms. Musolf's history and characteristics, her remorse and acceptance of responsibility, her role in the offense, her treatment needs and the need for deterrence and just punishment.

Respectfully submitted,

MESHBESHER & SPENCE, LTD.

Dated: March 22, 2023

By: */s/ Daniel Guerrero*
Daniel Guerrero, #206040
1616 Park Avenue
Minneapolis, MN 55404
(612) 339-91221
dguerrero@meshbesher.com

ATTORNEY FOR DEFENDANT

---

[4] Given Ms. Musolf's current situation and her demonstrated ability to stay sober, law-abiding, and employed, we believe it would not be beyond the realm to consider a sentence of probation with strict conditions and a period of home confinement.